UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Lamont E. Paige

    v.                          Case No. 23-cv-353-SE-AJ

Warden, Federal Correctional
Institution, Berlin, New Hampshire

### REPORT AND RECOMMENDATION

Lamont E. Paige, a federal prisoner in New York, filed this petition under 28 U.S.C. § 2241 petition when he was at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"). The petition challenges a disciplinary proceeding in 2022 that resulted in Mr. Paige's loss of good conduct time. His petition asserts claims of Fifth Amendment due process violations and First Amendment retaliation, and he seeks expungement of his disciplinary record and restoration of good conduct time credits.

Before the court is the Warden's motion for summary judgment (Doc. No. 4). Mr. Paige objects (Doc. No. 9).

### Legal Standard

Under Federal Rule of Civil Procedure 56(a), the court shall grant a motion for summary judgment when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.

"A genuine dispute is one that would permit a rational factfinder to resolve the issue in favor of either party, and a material fact is one that has the "potential to affect the outcome of the suit under the applicable law." Gattineri v. Wynn MA, LLC, 63 F.4th 71, 84-85 (1st Cir. 2023) (internal quotation marks omitted). The court draws all reasonable inferences in favor of the nonmoving party from the properly supported facts in the record. Lech v. von Goeler, 92 F.4th 56, 64 (1st Cir. 2024). Based on that view of the record, the court must determine whether the moving party has shown that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## **Background**

The following facts are undisputed except as otherwise indicated. Mr. Paige's petition challenges a disciplinary proceeding at FCI Berlin that arose from phone calls he made to family members on April 15, 2022 and April 16, 2022, following a cell search involving FCI Berlin Corrections Officer ("CO") O'Sullivan. It is undisputed that Mr. Paige's phone calls were recorded and routinely monitored on a later date, May 1, 2022, and that the officer who monitored those calls, CO Page, wrote up the incident report on the day that he heard them.

On April 15, 2022, after the cell search, shortly before the phone calls at issue, Mr. Paige sent emails to "AW

2

Operations" and the Warden, reporting that CO O'Sullivan had searched his cell while he was out of his cell at work, and that CO O'Sullivan had thrown his belongings everywhere. He further reported that FCI Berlin COs were disrespectful, and that Mr. Paige and his family would report the incident. See Doc. No. 1-1, at 5-6. Mr. Paige's email to the Warden further complained that CO O'Sullivan's search was "retaliatory . . . for writing a BP-8 on him." Doc. No. 1-1, at 6. Shortly after sending those emails, Mr. Paige called his sister and his wife, to complain about what had happened. Mr. Paige made statements in those calls about wanting to punch or hit CO O'Sullivan.

On May 1, 2022, CO Page listened to a recording of those phone calls and heard Mr. Paige talk about CO O'Sullivan. CO Page reported that Mr. Paige said repeatedly that CO O'Sullivan made him so angry he was ready to hit him.[1] CO Page wrote that

---

[1] CO Page wrote the following:

On 5-1-2022, at 8:30 AM, I was monitoring inmate phone calls and emails. I listened to a call placed from the PAC of Inmate Paige . . . on 4-15-202 at 12:08 PM.

During the call, and in several calls, inmate Paige begins discussing FCI Berlin Staff. In this particular call, he references a specific staff member, stating "This dude, O'Sullivan," a reference to Officer J. O'Sullivan. He discusses an interaction with that staff member before immediately referencing an ideation to commit bodily harm to that staff member. He started by stating "They be acting so tough, but they're straight pussy, man." He then

3

Mr. Paige expressed the same anger and desire to assault FCI Berlin staff in other calls on that day and on the next day.

Based on the content of Mr. Paige's phone conversations, CO Page wrote up an incident report on the day he listened to those calls, charging Mr. Paige with violating Prohibited Act Codes 203 (threatening another with bodily harm), 312 (being insolent to a staff member), and 404 (using abusive/obscene language). On May 1, 2022, CO McCormack delivered that incident report to Mr. Paige.

A disciplinary hearing was held on May 19, 2022. Mr. Paige explained to the DHO that CO O'Sullivan searched his cell and threw his materials everywhere, then left his cell a mess after the search, and, when Mr. Paige confronted him about the

---

    continues "That shit got me so heated, I had to walk away." He then specifically references striking the Officer, stating, "I was ready to swing on them." He then continues the conversation, stating, "I'm ready to swing on him cause he acting like a tough guy and I know he ain't." He then verbalized that he continues to feel those ideations, stating "That shit got me heated."

    I continued monitoring calls before noting a pattern of the inmate expressing a desire to cause bodily harm to a staff member. Soon after the first call, the inmate places a call on 4-15-2022 at 1:06 PM . . . . He again references that staff member before stating a desire to assault him, notably "Punch him in the mouth."

    . . . .

Doc. No. 1-1, at 1.

4

condition of his cell, CO O'Sullivan said he could do that. Mr. Paige further explained that he was simply blowing off steam while talking to his sister and his wife after that cell search.

The disciplinary hearing officer ("DHO") considered Mr. Paige's explanation, CO Page's incident report, and the recorded calls. The DHO concluded that the incident report "correlated" with the recorded calls,[2] and the DHO found that Mr. Paige committed each of the charged prohibited acts. The DHO specifically found that the violations threatened prison safety and security, and the DHO imposed sanctions that included the loss of 27 days of good conduct time.

Mr. Paige appealed that decision. On January 17, 2023, the BOP Central Office upheld the decision.

---

[2] The DHO report describes the calls as follows:

> Upon reviewing the calls, it was obvious in the beginning of the conversation that inmate Paige was upset and venting about a specific staff member. As the conversation continues, inmate Paige expressed the desire to act upon assaulting the staff member due to being frustrated. Inmate Paige was informed that by stating those threatening desires out loud, he was not only insolent, but became a threat to staff safety. Whether or not he physically acted upon those desires was not why the report was generated. Inmate Paige was informed he must rein in how he vents, because while having a heated discussion, he was not controlling his thoughts on how he felt, but what he wanted to do, such as, "Punch him in the mouth." . . .

Doc. No. 4-3, at 4.

Mr. Paige's § 2241 petition focuses on the Code 203 and Code 312 violations.[3] He argues that the evidence was insufficient to support his disciplinary conviction because he made the statements to family members by telephone, and he never directly threatened or was insolent to prison staff. He also challenges the disciplinary proceedings on the bases that the delivering officer's name in the incident report was misspelled, the incident report was not signed, and, he claims, FCI Berlin COs took actions in retaliation for his administrative complaints. Mr. Paige seeks expungement of his disciplinary record and restoration of good conduct time. The Warden moves for summary judgment on all of the claims.

## Discussion

I. <u>Due Process and Prison Disciplinary Proceedings</u>

   A. <u>Due Process Standard</u>

Prisoners have a protected liberty interest in their good conduct time, which affords them certain due process safeguards in disciplinary proceedings before they can be sanctioned with a loss of good conduct time. See Sup't, <u>Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 453-54 (1985). The minimum procedural due

---

[3] Mr. Paige does not challenge to the Code 404 disciplinary violation (using abusive or obscene language). Only the Code 203 violation resulted in the loss of good conduct time.

process requirements are: written notice of the charge, the ability to call witnesses and present documentary evidence (when doing so is consistent with institutional safety and correctional concerns), a hearing before an impartial decisionmaker, and a written statement of the evidence relied on and reasons for the DHO's decision.  See Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005); see also Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974).  In the prison disciplinary context, a prisoner's due process rights are met if the DHO's finding is supported by "some evidence in the record," Hill, 472 U.S. at 454, which has "some basis in fact," id. at 456, such that "the record is not so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary," id. at 457.

   B.   Sufficiency of the Evidence

   Mr. Paige challenges the sufficiency of the evidence to support the loss of good conduct time imposed for the Code 203 conviction, as well as the sufficiency of the evidence for the Code 312 violation.  Code 203 prohibits inmates from "[t]hreatening another with bodily harm or any other offense." 28 C.F.R. § 541.3, Table 1, Prohibited Acts and Available Sanctions.  Code 312 prohibits inmates from insolence toward a

7

staff member. Id. Neither offense, as written, is limited to threats or insolence directly uttered to a prison staff member.

Courts have interpreted threats of harm made by prisoners in correspondence or communications to third parties, rather than directly to a staff member, as violations of Code 203. See, e.g., Nicolescu v. Bobby, No. 22-3253, 2023 WL 6620290, at *3, 2023 U.S. App. LEXIS 26982, at *7-8 (7th Cir. Oct. 11, 2023) (prisoner's threats concerning a guard, made in Romanian in speaking to his mother on phone, were evidence of violation of Code 203), cert. denied, No. 23-7474, 2024 WL 3014586 (U.S. Jun. 17, 2024); Lane v. Salazar, 911 F.3d 942, 948-49 (9th Cir. 2018) (indirect threats to harm prison guards made in a letter to BOP Central Office violated Code 203); Borker v. Baltazar, No. CV-14-0197, 2014 WL 5020602, at *3, 2014 U.S. Dist. LEXIS 142935, at *8 (M.D. Pa. Oct. 8, 2014) (prisoner's email to third parties that prisoner would have sex with a staff member and then extort money from her before reporting her was a violation of Code 203); cf. Jones v. Jones, No. 17-cv-70, 2018 WL 1525439, at *2, 2018 U.S. Dist. LEXIS 51083, at *4-5 (E.D. Tex. Mar. 27, 2018) (threatening statements made by prisoner's son, in telephone conversation between prisoner and his son, were evidence of prisoner's violation of Code 203 (on aiding/abetting theory)).

Similarly, insolent statements or actions showing disrespect for a prison staff member are violations of Code 312,

8

whether they are delivered "directly or indirectly," because "[f]ederal prisons cannot function properly unless prisoners show a proper respect for prison officials." Jones v. Harcey, No. CIV. 11-616 MJD/AJB, 2012 WL 2884920, at *9, 2012 U.S. Dist. LEXIS 97506, at *27-28 (D. Minn. Feb. 9, 2012), R&R adopted, 2012 WL 2885114, 2012 U.S. Dist. LEXIS 97163 (D. Minn. July 13, 2012).

Mr. Paige does not dispute that he made the statements that form the basis of the charges that resulted in his loss of good conduct time. The recording of those statements, in the record before the DHO, provide a sufficient basis for the findings that Mr. Paige threatened an FCI Berlin CO and expressed insolence towards an FCI Berlin staff member. Accordingly, the district judge should grant the Warden's motion for summary judgment on Mr. Paige's sufficiency of the evidence claims.

### C.  Spelling and Signatures

Mr. Paige challenges the validity of the disciplinary proceeding on the ground that Officer "McCormick" delivered the incident report to him but the name on the report is spelled differently ("McCormack"), and neither the delivering officer nor the reporting officer, CO Page, personally signed the

report.[4]  With respect to the spelling of the officer's name, there is no due process right to receive disciplinary records free of typos (assuming, without deciding, that the name at issue was in fact misspelled).  Moreover, nothing in the record suggests that the spelling of that name caused any confusion about who prepared or delivered the report, or any other prejudice to the petitioner, affecting his rights under Wolff or the outcome of the disciplinary proceeding.

With respect to the signatures, there is similarly no due process right implicated, and no showing of prejudice.  Mr. Paige does not dispute that he received a copy of the incident report before the hearing; he does not point to any other due process violation under Wolff; and he fails to suggest any grounds for finding that he suffered any prejudice in the disciplinary proceedings relating to how the forms were prepared and delivered.  The petitioner's claims about the signatures and spelling are without merit.  See Reyes-Rodriguez v. Warden, FCI Beaumont, No. 22cv183, 2023 WL 8483930, at *3, 2023 U.S. Dist. LEXIS 218915, at *8-9 (E.D. Tex. Oct. 30, 2023), R&R adopted,

---

[4] The Warden notes that the signature lines on the form include only a typed version of the names, as the COs signed electronically, in accordance with the Government Paperwork Elimination Act and the Discipline and Administration Reintegration Tracking System.  See generally United Spinal Ass'n, Inc. v. O'Malley, No. 20-cv-2236, 2024 WL 3400259, at *1, 2024 U.S. Dist. LEXIS 121504, at *2 (D.D.C. July 11, 2024).

2023 WL 8478004, 2023 U.S. Dist. LEXIS 217953 (E.D. Tex. Dec. 7, 2023). Accordingly, the district judge should grant the Warden's motion for summary judgment on Mr. Paige's claims relating to the spelling and signatures in the incident report.

## II. Retaliation

### A. Retaliatory Discipline Charge

Mr. Paige asserts a First Amendment claim challenging the disciplinary charge, contending that CO Page wrote up the incident report on May 1, 2022 in retaliation for Mr. Paige's administrative complaints on or about April 15, 2022. He seeks expungement of the disciplinary record and restoration of lost good time credits. The Warden moves for summary judgment, maintaining that the retaliation claim lack merit and belongs in a prisoner civil rights suit, not a § 2241 petition.[5]

---

[5] This court expresses no opinion as to whether any of Mr. Paige's retaliation claims might be remedied in a prisoner civil rights action or other administrative proceeding. Cf. Egbert v. Boule, 596 U.S. 482, 499 (2022) (no implied cause of action for damages is available against federal officers for claims of First Amendment retaliation); cf. also 31 U.S.C. § 3723(a) (BOP Director may "settle a claim for not more than $1,000 for damage to, or loss of, privately owned property that . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment").

11

Assuming, without deciding, that Mr. Paige's retaliatory discipline claim can proceed in this § 2241 petition,[6] this court turns to its merits.  To survive summary judgment on a First Amendment retaliation claim, the prisoner must first adduce facts sufficient to show that there is a causal link between his First Amendment activity and any non-de minimis retaliatory acts.  Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  If prison officials present a non-retaliatory reason for the adverse consequences, summary judgment may be avoided if there is also evidence that First Amendment retaliation was a motivating factor.  See Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009) (citing McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)); accord Turner v. Wall, No. 18-1869, 2020 WL 5543935, at *3, 2020 U.S. App. LEXIS 30047, at *9-10 (1st Cir. May 5, 2020) ("to defeat summary judgment, [the prisoner] was required to produce evidence sufficient to support a finding that he would not have been transferred to Florida if he had not filed this lawsuit").  This court must determine if the record, viewed in a light most favorable to the prisoner as the non-

---

[6]Compare Lasko v. Holt, 334 F. App'x 474, 477 (3d Cir. 2009) (retaliation claim "is proper in the habeas context if, for example, a petitioner's success will necessarily imply the invalidity" of his loss of good conduct time); with Martin v. Galipeau, 801 F. App'x 444, 446 (7th Cir. 2020) ("A § 2254 petition to recover lost good-time credit is not the way to bring a claim that a prison official retaliated against an inmate for the protected activity of filing a grievance."),

moving party, "contains a genuine dispute of material fact as to whether [the prisoner] was punished for engaging in protected conduct apart from the legitimate misconduct" that was charged. See Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016).

The petitioner here offers no direct evidence of any retaliatory motive. Rather, he points to the timing of events, namely, his complaints about the cell search to a supervising officer in front of CO Page and other officers, followed by his submission of BP-8s to the Warden, Assistant Warden and other prison officials, which he says led them to see the condition of his cell. Then, approximately two weeks later, on May 1, 2022, CO Page wrote up the incident report.

The Warden has presented a non-retaliatory explanation for the timing of the incident report and the disciplinary consequences. It is undisputed that prisoner phone calls are routinely recorded and monitored, and that CO Page was monitoring previously-recorded prisoner calls on May 1, 2022 when he heard the calls at issue. Consistent with BOP regulations, CO Page wrote up an incident report based on what he heard, which was delivered to Mr. Paige on May 1, 2022. See 28 C.F.R. § 541.5(a) ("The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are

13

charged with committing."); BOP Program Statement ("PS") 5270.09, CN-1 (Nov. 18, 2020), "Inmate Discipline Program," at 18 (staff "must" prepare incident report upon witnessing or reasonably believing violation has occurred).[7]

Where it is undisputed that the petitioner made the statements at issue, that those statements were heard in the course of routine monitoring which happened to occur after Mr. Paige complained to prison officials, and the DHO, after a hearing, reasonably concluded upon the record before him that Mr. Paige's statements violated the pertinent disciplinary codes, there is an absence of any genuine issue as to whether Mr. Paige would have received the same incident report and disciplinary consequences, regardless of CO Page's motivation. Cf. Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994) ("the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citations omitted)). Accordingly,

---

[7] See BOP, Policy & Forms, BOP Policies, PS 5270.09, CN-1, available at https://www.bop.gov/PublicInfo/execute/policysearch (last visited Aug. 17, 2024).

the district judge should grant the Warden's motion for summary judgment on the retaliatory discipline claim.[8]

B. Remaining Retaliation Claims

Mr. Paige further asserts that, on April 15, 2022, he submitted administrative complaints regarding FCI Berlin COs, and that CO O'Sullivan left his cell in disarray after the search, and the officers lost or destroyed belongings he values at over $200.00. He argues that the sequence of events shows that the COs took actions in retaliation for his administrative

---

[8] This recommendation is consistent with -- but not dependent on -- the application of the so-called "checkmate" doctrine, applied in retaliatory discipline cases in other jurisdictions, where courts conclude that if there is some evidence to support the DHO's decision, and no due process violation has occurred, judgment for prison officials is granted as a matter of law. See, e.g., Williams v. Radford, 64 F.4th 1185, 1195 (11th Cir. 2023) ("if an inmate is 'found guilty of an actual disciplinary infraction after being afforded due process,' and 'there was evidence to support the disciplinary panel's fact finding,' he cannot assert a retaliation claim" (citation omitted)); accord Requena v. Roberts, 893 F.3d 1195, 1211 (10th Cir. 2018); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (if prison disciplinary committee's finding of violation of prison rules is based on some evidence, that "finding essentially checkmates [a] retaliation claim")); see also Martin v. Galipeau, 801 F. App'x 444, 446 (7th Cir. 2020) ("The due process protections set forth in Wolff . . . shield prisoners from arbitrary actions."). But see Maben v. Thelen, 887 F.3d 252, 262 (6th Cir. 2018) (rejecting "checkmate" doctrine, concluding that "[a] finding of guilt at a prison misconduct hearing does not act as an absolute bar to a prisoner's First Amendment retaliation claim").

complaints. The Warden seeks summary judgment on these retaliation claims upon the ground that they lack merit and are not justiciable in a federal habeas petition.

"It is bedrock law that 'requested relief' must 'redress the alleged injury.'" Babb v. Wilkie, 589 U.S. 399, 413 (2020) (citation omitted). Section 2241 gives this court jurisdiction over habeas petitions asserting that a person is in detention in violation of his federal rights. A claim that is not properly remedied by an order affecting the fact or duration of a person's detention or the execution of his sentence is not within the "core of habeas." Jupiter v. Warden, USP Lewisburg, 237 F. App'x 726, 728 (3d Cir. 2007) (per curiam) (relief under § 2241 was unavailable on petitioner's "access to the courts claim," which had "no bearing on the lawfulness of his incarceration," and "ultimate success on the merits of the claim [would not] result in [petitioner's] speedier release from prison").

The relief the petitioner has requested in his prayer for relief in his § 2241 petition does not control the question of whether his retaliation claims are appropriately litigated in a § 2241 petition. "While release from prison is a typical form of relief in a habeas action, the mere assertion of [a claim for release], when there is no corresponding factual basis for release, does not convert a conditions of confinement case,

16

which ordinarily seeks damages, into a habeas action." Bell v. United States, Civil Action No. 08-cv-00335-WDM-KLM, 2009 WL 1609396, at *3 n.2, 2009 U.S. Dist. LEXIS 130604, at *7 n.2 (D. Colo. May 19, 2009), R&R adopted, 2009 WL 1609396, 2009 U.S. Dist. LEXIS 48157 (D. Colo. June 9, 2009).

Here, the alleged unlawful cell search and property loss claims concern the conditions of Mr. Paige's past confinement at FCI Berlin, and not the fact, duration, or conditions of his current detention. The incidents took place at a prison where the petitioner is no longer incarcerated. The claim does not challenge his sentence calculations, the disciplinary proceedings that resulted in a loss of good conduct time, Mr. Paige's continued incarceration in a federal prison, or any ongoing exposure to a condition of confinement that is alleged to violate the petitioner's federal constitutional rights at this time. Cf. Gomes v. U.S. Dep't of Homeland Sec., Civil No. 20-cv-453-LM, 2020 DNH 102, 2020 WL 3258627, at *2-3, 2020 U.S. Dist. LEXIS 104844, at *5-9 (D.N.H. Jun. 16, 2020) (court had jurisdiction under § 2241 to consider claims for release to community-based alternatives, asserted by detainees claiming substantial health risks violating their due process rights, due to exposure to COVID-19 in detention facility). The petitioner's retaliation claims relating to the cell search and loss of property at FCI Berlin are not redressable by the relief

17

he seeks (expungement of his disciplinary record and restoration of good conduct time credits), or other relief available here. Those claims are thus not properly adjudicated here. See Rosario v. FCI Berlin Warden, No. 22-cv-175-JL, 2024 WL 3580953, at *3, 2024 U.S. Dist. LEXIS 135977, at *9 (D.N.H. Mar. 15, 2024) (retaliatory cell search claim that does not challenge either execution or duration of prisoner's sentence is not cognizable in § 2241 petition). Accordingly, the district judge should grant the Warden's motion for summary judgment and dismiss those retaliation claims without ruling on their merits.

## Conclusion

For the foregoing reasons, the district court judge should grant the Warden's motion for summary judgment (Doc. No. 4). Then, the clerk's office should enter judgment and close the case.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file

any objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

August 19, 2024

cc: Lamont Paige, pro se.
    Raphael Katz, Esq.

19